No. 79,287

STATE OF KANSAS, *Appellant,* v. JIMMY GALE CROW, *Appellee.*
(974 P.2d 100)

Opinion filed January 29, 1999.

*Joe Shepack*, county attorney, argued the cause and was on the brief for appellant.

*Janine Cox,* assistant appellate defender, argued the cause, and *Jessica R. Kunen*, chief appellate defender, was with her on the brief for appellee.

*Paige A. Nichols,* of Monnat & Spurrier, of Wichita, and *James F. Vano*, of Overland Park, were on the brief for *amicus curiae* Kansas Association of Criminal Defense Lawyers.

*Melanie S. Pfeifer,* assistant attorney general, *Jimmy Chen*, legal intern, and *Carla J. Stovall,* attorney general, were on the brief for *amicus curiae* Kansas Attorney General.

The opinion of the court was delivered by

LARSON, J.: The State of Kansas appeals on a question reserved the trial court's decision that K.S.A. 1996 Supp. 22-3437 unconstitutionally deprives a criminal defendant of the right to confront witnesses guaranteed by the Sixth Amendment to the United States Constitution.

K.S.A. 1996 Supp. 22-3437 allows a report and certificate by the person performing a forensic analysis to be admitted into evidence without testimony if the statutory procedure is followed and the opposing party does not question the conclusions of the report.

Three issues are raised: (1) Should we accept jurisdiction? (2) Do the 1996 amendments to 22-3437 apply to a crime committed in 1995? (3) If we consider the question reserved, does K.S.A. 1996

Supp. 22-3437 unconstitutionally deny a criminal defendant the right to confrontation?

*Factual statement*

Jimmy Gale Crow was stopped by a Kansas Highway Patrolman in April 1995 and charged with possession with intent to sell, deliver, or distribute approximately 100 pounds of marijuana contrary to K.S.A. 1996 Supp. 65-4163, a level 2 felony.

Due to Crow's arrest in another jurisdiction after he was released on bond in Kansas, his preliminary hearing was not held until November 12, 1996.

On November 20, 1996, the State filed notice of intent to proffer a forensic lab report into evidence at trial showing that the vegetation tested was marijuana and its active ingredient was tetrahydrocannabinol (THC), pursuant to K.S.A. 1996 Supp. 22-3437.

Crow did not object to the State's motion on the ground the conclusions of the report would be contested at trial. Rather, he asserted that the provisions of K.S.A. 1996 Supp. 22-3437 violated his rights under Section 10 of the Kansas Constitution Bill of Rights and the Sixth Amendment to the United States Constitution to meet and confront the witnesses against him.

The trial court ruled that K.S.A. 1996 Supp. 22-3437 violated Crow's Sixth Amendment right to confront witnesses and refused the State's attempt to offer the lab reports without testimony of the preparer. The trial court noted the State reserved the issue of the constitutionality of the statute for appeal.

Crow subsequently reached a plea agreement with the State, pled guilty, and was convicted. The State properly appealed the question reserved.

*Jurisdiction*

Although K.S.A. 22-3602(b)(3) provides for appeals to the Kansas Supreme Court as a matter of right "upon a question reserved by the prosecution," we held in *State v. Kopf*, 211 Kan. 848, 508 P.2d 847 (1973), that appeals will not be entertained merely to demonstrate whether error has been committed by the trial court in its rulings adverse to the State. We generally only accept appeals on questions reserved which involve issues of statewide interest

important to the correct and uniform administration of the criminal law and the interpretation of statutes. *State v. Woodling,* 264 Kan. 684, Syl. ¶ 3, 957 P.2d 398 (1998).

The issue raised here appears to be of statewide interest. It is likely to be considered in a large number of prosecutions where an element of a crime or important area of proof involves some type of testing or laboratory determination. In addition, the issue would have been appealable under K.S.A. 22-3601(b)(2) as an instance where a statute of this state has been declared unconstitutional had the issue not been mooted by Crow's guilty plea. The question reserved meets the statutory requirements for our court to consider and decide.

*Do the 1996 amendments to 22-3437 apply to the prosecution of a crime allegedly committed in 1995?*

This argument was not the basis of Crow's objection to the constitutionality of the statute at the trial court. We have held that "[a]n issue not presented to the trial court will not be considered for the first time on appeal." *State v. Alderson,* 260 Kan. 445, Syl. ¶ 7, 922 P.2d 435 (1996). However, Crow now contends the proffer made under a statute amended and effective July 1, 1996, does not apply to the prosecution of a crime allegedly committed in 1995. We will not decline to consider the question reserved, as this procedural argument is clearly not correct.

We held in *State v. Nunn,* 244 Kan. 207, Syl. ¶ 9, 768 P.2d 268 (1989), that "[a]s related to criminal law and procedure, substantive law is that which declares what acts are crimes and prescribes punishment therefor; whereas procedural law is that which provides or regulates the steps by which one who violates a criminal statute is tried and punished." See *State v. Noah,* 246 Kan. 291, 788 P.2d 257 (1990). The statute in issue here is clearly procedural. The 1996 provisions of 22-3437 apply to the crime that was allegedly committed in 1995.

We hold Crow's argument on appeal that K.S.A. 1996 Supp. 22-3437 is not applicable to the present case has no legally justifiable basis.

*Does K.S.A. 1996 Supp. 22-3437 deny a criminal defendant his or her Sixth Amendment right to confrontation?*

## Standard of review

Interpretation of a statute is a question of law over which our court's review is unlimited. *State v. Lewis*, 263 Kan. 843, 847, 953 P.2d 1016 (1998).

"A statute is presumed constitutional and all doubts must be resolved in favor of its validity. If there is any reasonable way to construe a statute as constitutionally valid, the court must do so. A statute must clearly violate the constitution before it may be struck down. This court not only has the authority, but also the duty, to construe a statute in such a manner that it is constitutional if the same can be done within the apparent intent of the legislature in passing the statute." *Peden v. Kansas Dept. of Revenue*, 261 Kan. 239, Syl. ¶ 2, 930 P.2d 1 (1996), *cert. denied* 137 L. Ed. 2d 1029 (1997).

See *State v. Meinert*, 225 Kan. 816, 817, 594 P.2d 232 (1979), where we held that if there is any reasonable way to construe a statute as constitutionally valid, we should do so.

## The statute in issue

K.S.A. 1996 Supp. 22-3437 reads in its entirety as follows:

"(1) In any hearing or trial, a report concerning forensic examinations and certificate of forensic examination executed pursuant to this section shall be admissible in evidence if the report and certificate are prepared and attested by a criminalist or other employee of the Kansas bureau of investigation, Kansas highway patrol or any laboratory of the federal bureau of investigation, federal postal inspection service, federal bureau of alcohol, tobacco and firearms or federal drug enforcement administration. If the examination involves a breath test for alcohol content, the report must also be admissible pursuant to subsection (f)(1) of K.S.A. 8-1001, and amendments thereto, and be conducted by a law enforcement officer or other person who is certified by the department of health and environment as a breath test operator as provided by K.S.A. 65-1,107 *et seq.* and amendments thereto.

"(2) Upon the request of any law enforcement agency, such person as provided in subsection (1) performing the analysis shall prepare a certificate. Such person shall sign the certificate under oath and shall include in the certificate an attestation as to the result of the analysis. The presentation of this certificate to a court by any party to a proceeding shall be evidence that all of the requirements and provisions of this section have been complied with. This certificate shall be sworn to before a notary public or other person empowered by law to take oaths and shall contain a statement establishing the following: The type of analysis performed; the result achieved; any conclusions reached based upon that result; that the subscriber is the person who performed the analysis and made the conclusions; the subscriber's training or experience to perform the analysis; the nature and

condition of the equipment used; and the certification and foundation requirements for admissibility of breath test results, when appropriate. When properly executed, the certificate shall, subject to the provisions of subsection (3) and notwithstanding any other provision of law, be admissible evidence of the results of the forensic examination of the samples or evidence submitted for analysis and the court shall take judicial notice of the signature of the person performing the analysis and of the fact that such person is that person who performed the analysis.

"(3) Whenever a party intends to proffer in a criminal or civil proceeding, a certificate executed pursuant to this section, notice of an intent to proffer that certificate and the reports relating to the analysis in question, including a copy of the certificate, shall be conveyed to the opposing party or parties within 20 days after arraignment, if a criminal proceeding or at least 20 days before a civil trial begins. An opposing party who intends to object to the admission into evidence of a certificate shall give notice of objection and the grounds for the objection within 10 days upon receiving the adversary's notice of intent to proffer the certificate. Whenever a notice of objection is filed, admissibility of the certificate shall be determined not later than two days before the beginning of the trial. A proffered certificate shall be admitted in evidence unless it appears from the notice of objection and grounds for that objection that the conclusions of the certificate, including the composition, quality or quantity of the substance submitted to the laboratory for analysis or the alcohol content of a blood or breath sample will be contested at trial. A failure to comply with the time limitations regarding the notice of objection required by this section shall constitute a waiver of any objections to the admission of the certificate. The time limitations set forth in this section may be extended upon a showing of good cause."

## State's contentions

The State argues the right to confrontation is not an absolute right and exceptions to the hearsay rule have been held not to violate the Sixth Amendment of the United States Constitution. See *Bourjaily v. United States*, 483 U.S. 171, 181-84, 97 L. Ed. 2d 144, 107 S. Ct. 2775 (1987); *Ohio v. Roberts*, 448 U.S. 56, 66, 65 L. Ed. 2d 597, 100 S. Ct. 2531 (1980).

The State points out that we said in *State v. Chisholm*, 245 Kan. 145, Syl. ¶ 2, 777 P.2d 753 (1989): "The fundamental right of a defendant to confront a witness in a criminal trial is not absolute and has exceptions where necessary to further an important public policy." A balancing test described in *Chisholm* requires the State to prove by clear and convincing evidence that an important public policy exists that would be furthered by the admission of hearsay evidence. If this burden is sustained, the court is then to balance

this policy against the accused's right to face-to-face confrontation under the Sixth Amendment.

The State argues the conclusion of laboratory reports that verify an item to be a statutorily prohibited controlled substance are seldom the crucial issue in a trial. The defense of real benefit to an accused is more likely to be a claimed search and seizure violation, the absence of possession (ownership of the contraband by some other party), reasonable lack of knowledge of the presence of the illegal substance, improper identity, alibi, insufficient evidence of other elements of the crime, or lack of proof beyond a reasonable doubt.

The State admits the Federal Rules of Evidence have not been adopted in Kansas, but points to a multitude of federal cases construing Fed. R. of Evid. 803(6), making a forensic report admissible in a federal court under the business records exception to the hearsay rule without violation of the Confrontation Clause of the Sixth Amendment. See, *e.g., United States v. Baker*, 855 F.2d 1353 (8th Cir. 1988).

The State further and most convincingly contends that an accused *is* given the opportunity under the statute in issue to litigate and contest the reliability and conclusions of the scientific foundation in a laboratory report if it becomes a trial issue.

The Attorney General, in her *amicus curiae* brief, states: " 'The constitutionality of rules establishing these kinds of pretrial procedures has been upheld on the basis that such rules serve "[t]he State's interest in the orderly conduct of a criminal trial." ' " *State in Interest of J.H.*, 244 N.J. Super. 207, 217, 581 A.2d 1347 (1990) (quoting *Taylor v. Illinois*, 484 U.S. 400, 411, 98 L. Ed. 2d 798, 108 S. Ct. 646 [1988]). This brief presented legislative history showing forensic experts testified in only 8% of cases where they were subpoenaed. It points out we have a similar statute allowing admissibility of a forensic report at preliminary hearing (K.S.A. 1996 Supp. 22-2902a). It also argues the opportunity for cross-examination *does* exist under the statutory provisions. K.S.A. 1996 Supp. 22-3437 is claimed to be no more obstructive than other pretrial procedures. The Attorney General finally makes what appears to be a "best evidence" argument that the notes and reports

of forensic scientists would be what they would refer to in live testimony and the summarized written statements are likely to be as reliable as what can be garnered from the refreshed memory of the person testifying.

*Crow's contentions*

Crow argues the constitutional right to confrontation is much more important than a perceived governmental interest in the economy of prosecutions. A literal reading of the Sixth Amendment requires confrontation.

Crow also argues the statute does not meet the unavailability requirement as it does not fall within any firmly rooted exception to the hearsay rule.

Crow counters the State's argument that lab reports should be admissible under the business records exception in arguing that the Federal Rules of Evidence are *not* applicable in Kansas and that the 10th Circuit case cited by the State, *Minner v. Kerby*, 30 F.3d 1311 (10th Cir. 1994), relates to a supervisor's testimony from an employee's notes and has no connection to a K.S.A. 1996 Supp. 22-3437 consideration.

The Kansas Association of Criminal Defense Lawyers, in its *amicus curiae* brief, reiterates that the right to confrontation should not be taken lightly and cannot be outweighed by interests in judicial economy. It claims the legislature may not create a presumption that a defendant has no interest in confronting certain categories of evidence. It further asserts that K.S.A. 1996 Supp. 22-3437 unconstitutionally shifts the burden of proof to an accused in a criminal case and that allowing a judge to decide whether a forensic report will be contested at trial deprives a defendant of the right to have a jury decide if the challenge to the report is credible.

Crow counters the claim of similar statutes being approved by other states by pointing to *Miller v. State*, 266 Ga. 850, 855, 472 S.E.2d 74 (1996), as a case where the Georgia Supreme Court struck down a similar statute for the precise reasons he claims in this case.

*Analysis*

Although the trial court's ruling was based on a violation of the Sixth Amendment to the United States Constitution, which states:

"In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him," Section 10 of the Kansas Constitution Bill of Rights likewise requires that in "all prosecutions, the accused shall be allowed . . . to meet the witness face to face, and to have compulsory process to compel the attendance of the witnesses in his behalf."

While we do have the right to interpret our Kansas Constitution in a manner different than the United States Constitution has been construed, *State v. Schultz*, 252 Kan. 819, 824, 850 P.2d 818 (1983), we have not traditionally done so. See *Murphy v. Nelson*, 260 Kan. 589, 597, 921 P.2d 1225 (1996). The wording of both provisions relates to substantially the same requirement of confrontation, and the result we reach will apply to both.

The result courts have reached in response to the application of the Confrontation Clause to admission of hearsay testimony was recently described by Justice Thomas in his concurring opinion in *White v. Illinois*, 502 U.S. 346, 358, 116 L. Ed. 2d 848, 112 S. Ct. 736 (1992), as "complicated and confused."

The relationship and interaction between the hearsay rule and the right of confrontation in many different factual situations will not be adequately explained herein, but we rely on and generally quote from 2 McCormick on Evidence § 252, p. 126 (4th ed. 1994): "The hearsay rule operates to preserve the ability of a party to confront the witnesses against him in open court. The Confrontation Clause does the same for an accused in a criminal case."

Both the hearsay rule and the Confrontation Clause have numerous exceptions. Their interaction has led to confusion, with the debate boiling down to "whether the Confrontation Clause merely constitutionalizes the hearsay rule for the accused in a criminal case or whether it operates to limit the introduction of evidence admissible under the rule and its exceptions." 2 McCormick on Evidence § 252, p. 126. McCormick suggests recent Supreme Court decisions point strongly to the first analysis.

The Supreme Court has progressed toward its present view in a series of cases commencing with *California v. Green*, 399 U.S. 149, 26 L. Ed. 2d 489, 90 S. Ct. 1930 (1970); *Ohio v. Roberts*, 448 U.S. 56; *United States v. Inadi*, 475 U.S. 387, 89 L. Ed. 2d 390, 106 S.

Ct. 1121 (1986); *Idaho v. Wright*, 497 U.S. 805, 111 L. Ed. 2d 638, 110 S. Ct. 3139 (1990); and finally *White v. Illinois*, 502 U.S. 346. At first, the cases suggested unavailability of the declarant was required but then the Court retreated from that requirement. It held in *Idaho v. Wright* that the hearsay exception may violate the Confrontation Clause unless it is a "firmly rooted" exception and that the statements are constitutionally admissible only if based on a finding of "particularized guarantees of trustworthiness."

None of these United States Supreme Court cases give us much guidance as to whether the admission of test results should be considered to be "trustworthy," although the State would contend that the analysis of its trained scientists certainly are. While K.S.A. 1996 Supp. 22-3437 is one of the newer hearsay exceptions, it may not be disqualified from being firmly rooted because of its great similarly to the routine admission of business records. With the lack of any United States Supreme Court decisions on whether lab reports are admissible without the live testimony of the preparer, we look to lower courts, both federal and state, which are divided. The issue is complicated because many of the federal cases involve Fed. R. Evid. 803(6) or (8), which are not sufficiently comparable to K.S.A. 1996 Supp. 60-460(m) or K.S.A. 1996 Supp. 22-3437 to provide any persuasive authority. We construe our own rules of evidence and are not bound by or compelled to adopt any case construing the Federal Rules of Evidence. See *Atteberry v. Ritchie*, 243 Kan. 277, 284, 756 P.2d 424 (1988).

The best explanation and gathering of authorities on the issue of the admission of laboratory reports are two law review articles written by Professor Paul C. Giannelli of Case Western Reserve University Law School. See Giannelli, *The Admissibility of Laboratory Reports in Criminal Trials: The Reliability of Scientific Proof*, 49 Ohio St. L.J. 671 (1988); Giannelli, *Expert Testimony and the Confrontation Clause*, 22 Cap. U. L. Rev. 45 (1993).

Professor Giannelli summarizes the history of admissibility of laboratory reports in the following manner:

"Laboratory reports are typically offered in evidence as either business records or public records, both of which are recognized exceptions to the hearsay rule.

"The U.S. Supreme Court has not addressed the issue of whether such reports are constitutionally admissible, and the lower courts are divided. Prior to *Ohio v. Roberts*, a number of courts rejected the constitutional argument, while others had accepted it. This division continues today. Some courts have found confrontation violations, while others have not." 22 Cap. U. L. Rev. at 69-70.

Many of the cases cited have been decided under the Federal Rules of Evidence and are not helpful to us for reasons previously stated. Others involve state statutes which are materially different from ours. Logical arguments can be made for both points of view, as the State and Crow have done.

If we choose not to uphold K.S.A. 1996 Supp. 22-3437, we would follow the reasoning of *Miller v. State*, 266 Ga. at 858, which suggests (1) the State must carry the burden of proving unavailability and reliability by a showing of particularized guarantees of trustworthiness; (2) such a certificate is not a business record; (3) the newly created procedure does not fall within a firmly rooted hearsay exception; (4) the statute does not provide that objection will result in the lab analyst's appearance in court; and (5) the statute impermissibility shifts the burden of proof from the State to the accused.

However, if we choose to uphold the constitutionality of this statute, we analyze it much as the Washington Court of Appeals did in *State v. Sosa*, 59 Wash. App. 678, 684-86, 800 P.2d 839 (1990), where it was held: (1) unavailability need not be shown because persons involved in routine activity are unlikely to recall the details of the transaction and cross-examination would serve little or no purpose; (2) the certified copy of the lab report is reliable evidence because skilled professionals, many with advanced degrees, perform the tests with no motive to falsify the report; (3) the statute parallels the firmly rooted business records exception; (4) the failure to subpoena the lab expert by the defendant was a waiver of a right under the rule and not the constitution, and (5) defense counsel's failure to demand the presence of the expert was not ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984).

Despite the State's assertion that the proffered evidence falls within the business records exception to the hearsay rule, it appears

clear that K.S.A. 1996 Supp. 22-3437 provides a separate, legislatively created exception to the hearsay rule which is not "firmly rooted," at least not historically. It might be firmly rooted if we decided to treat the proffered reports as business records, but that assumes the reliability of the reports, which may or may not exist depending on the circumstances. Arguments could be made as to reliability, but none has been presented to us.

Although rejecting use of a certificate under the facts of its case, the court in *State in Interest of J.H.*, 244 N.J. Super. at 217-18, upheld the constitutionality of a statute virtually identical to 22-3437. The court noted:

"[W]e believe that N.J.S.A. 2C:35-19 is susceptible to an interpretation which will facilitate the orderly and efficient conduct of trials under the Comprehensive Drug Reform Act while at the same time satisfying constitutional requirements. It is firmly established that a defendant may be required to participate in pretrial discovery in order to facilitate the trial of cases and to avoid unfair surprises to the prosecution. [Citations omitted.] For example, a defendant may be required to provide a notice of alibi before trial, stating the specific place where he claims to have been at the time of the alleged offense. R. 3:11-1. In addition, a defendant who seeks discovery from the state may be required to furnish the state with the reports of his experts, the names of persons whom he may call as witnesses, written statements of witnesses and any tangible evidence in his possession. R. 3:13-3(b). The constitutionality of rules establishing these kinds of pretrial procedures has been upheld on the basis that such rules serve '[t]he State's interest in the orderly conduct of a criminal trial.' *Taylor v. Illinois*, 484 U.S. 400, 411, 108 S. Ct. 646, 653, 98 L. Ed. 2d 798, 811 (1988); see also *Williams v. Florida*, 399 U.S. 78, 90 S. Ct. 1893, 26 L. Ed. 2d 446 (1970).

"Similarly, N.J.S.A. 2C:35-19 may be construed to establish a constitutionally valid pretrial procedure for determining whether the State will be allowed to rely upon the certificate of its chemist. If the defendant does not file a timely objection to the certificate, any possible objection is waived and the certificate may be admitted. *McCormick on Evidence, supra*, § 52. If defendant does object, he must state specific grounds of objections under the criteria of admissibility set forth in *Matulewicz* [,101 N.J. 27, 499 A.2d 1363 (1985)]. For example, a defendant may urge that the procedures involved in testing for a drug are highly complex or involve a large measure of subjectivity and consequently that an opportunity should be afforded to cross-examine the expert to determine how a particular test was conducted. A defendant also may urge that the laboratory certificate and any other supporting material submitted by the State do not contain sufficient information to determine the certificate's admissibility under *Matulewicz*. And where there is a factual issue as to the reliability of an expert's test procedures, the State

will be required to develop a record to establish the conditions of admissibility of the laboratory certificate. See *State v. Matulewicz, supra,* 101 N.J. at 32, 499 A.2d 1363; *R.K. v. Dept. of Human Services,* 215 N.J. Super. 342, 348-349, 521 A.2d 1319 (App. Div. 1987). In other words, N.J.S.A. 2C:35-19 may be construed to establish a procedural framework under which the State may ascertain before trial whether a defendant will object to the admission of a laboratory certificate and, if so, whether the certificate satisfies the tests of reliability set forth in *Matulewicz.*"

The Supreme Court of New Jersey in *State v. Matulewicz,* 101 N.J. 27, 30, 499 A.2d 1363 (1985), required that the certificate or proof

"should be adduced to reflect the relative degrees of objectivity and subjectivity involved in the procedure; the regularity with which these analyses are done; the routine quality of each analysis; the presence of any motive to single out a specific analysis for the purpose of rendering an untrustworthy report, and the responsibility of each State Police chemist to make accurate and reliable analyses."

The opinion continues to state there is a presumption, absent contrary testimony, that those responsible for services to the public will carry out their duties in a proper, careful, and prudent manner. 101 N.J. at 30-31. Finally, the New Jersey Supreme Court states that while the factors mentioned are certainly relevant, they are not intended to be exhaustive and a trial court may properly require proof regarding additional concerns as to indicia of trustworthiness necessary to justify admissibility. 101 N.J. at 31.

We recognize that in *State v. Sherry,* 233 Kan. 920, 929, 667 P.2d 367 (1983), we held that a similar statute, K.S.A. 1982 Supp. 22-2902a, was not unconstitutional in creating a procedure allowing introduction of forensic examination reports without the presence of the forensic examiner because "[t]here is no constitutional right to allow the accused to confront witnesses against him at the preliminary hearing." What may be a proper procedure for a preliminary hearing is not what is constitutionally required at a criminal trial. However, in *Sherry* we also said:

"If the defendant wishes to examine the qualifications of the forensic examiner, the procedure followed in testing the substance, or the results of the test, he may do so by subpoena, bringing the forensic examiner into court pursuant to K.S.A. 22-3214. A defendant may request discovery pursuant to K.S.A. 22-3212 and 22-

3213. Defendants also have the right to have similar or other tests performed by their own experts." 233 Kan. at 929.

We point to two other lines of Kansas cases with somewhat similar problems to our analysis.

In *State v. Zamora*, 263 Kan. 340, 949 P.2d 621 (1997), we recently held the Sixth Amendment right of confrontation is satisfied if the accused was once confronted by the witness at any stage of the proceedings and had the right of cross-examination. These cases turn on the "reasonable diligence rule," which requires a good faith effort to obtain the witness' presence at trial. See *State v. Cook*, 259 Kan. 370, 375, 913 P.2d 97 (1996), and the cases cited therein. Unavailability under this line of cases is not really comparable to the concept of dealing with laboratory reports, although our cases require diligent attempts to obtain the presence of witnesses before their preliminary examination testimony can be admitted at trial.

The other line of cases involve admission of hearsay testimony under K.S.A. 60-460(dd) where hearsay statements of a child victim are admitted without the right of face-to-face confrontation, see *State v. Chisholm*, 245 Kan. 145, 777 P.2d 753 (1989); *State v. Eaton*, 244 Kan. 370, Syl. ¶¶ 1, 2, 769 P.2d 1157 (1989); *White v. Illinois*, 502 U.S. 346. There are important public policy considerations in these cases involving psychological harm to a child-victim, and it is dangerous to expand the result or reasoning in such a case, for unspoken agendas seem to be involved. See Swift, *Smoke and Mirrors: The Failure of the Supreme Court's Accuracy Rationale in White v. Illinois Requires a New Look at Confrontation.* 22 Cap. U. L. Rev. 145 (1993).

At this point it is instructive to return to the step-by-step procedure set up by K.S.A. 1996 Supp. 22-3437 to determine if we can constitutionally construe its provisions. We attempt to do this, not in the abstract, but with real world thinking of how criminal cases are prepared and tried, intending to limit the burden on forensic examiners wherever possible, while protecting the accused's right to question evidence which connects the accused to the crime.

We acknowledge that the State asks us to limit our analysis of K.S.A. 1996 Supp. 22-3437 to the facts of this case and wishes us to reach our decision based only on the fact that marijuana is marijuana no matter how it is identified, a claimed issue of lesser importance in this case. Crow argues that the footprints of our decision will be far reaching and we must not preclude confrontation where questionable, new, subjective, or unscientific testing has been done which cries out for cross-examination.

The procedure in K.S.A. 1996 Supp. 22-3437 for allowing the admissibility of forensic reports and certificates is limited to named laboratories. It requires that a certificate (which would subject its preparer to the same perjury penalties as live trial testimony) be signed under oath by the party making the analysis, which attests to the result of the analysis.

In the attempt to show the reliability of the certificate (truthworthiness in a constitutional sense) the statute requires the certificate to contain the following:

"The type of analysis performed; the result achieved; any conclusions reached based upon that result; that the subscriber is the person who performed the analysis and made the conclusions; the subscriber's training or experience to perform the analysis; the nature and condition of the equipment used; and the certification and foundation requirements for admissibility of breath test results, when appropriate." K.S.A. 1996 Supp. 22-3437(2).

K.S.A. 1996 Supp. 22-3437(3) sets up the procedure whereby the certificate may be admitted or challenged. Notice of intent to proffer a certificate with a copy of the certificate attached must be conveyed to the opposing party within 20 days after arraignment in a criminal proceeding (or at least 20 days before a civil trial). An opposing party intending to object must give notice of objection and set forth the grounds for the objection within 10 days upon receipt of the adversary's notice of intent to proffer the certificate.

Once the objection is filed, the admissibility shall be determined not later than 2 days before the beginning of the trial. The statute states:

"A proffered certificate shall be admitted in evidence unless it appears from the notice of objection and grounds for that objection that the conclusions of the certificate, including the composition, quality or quantity of the substance sub-

mitted to the laboratory for analysis or the alcohol content of the blood or breath sample will be contested at trial." K.S.A. 1996 Supp. 22-3437(3).

This sentence is the most critical portion of the statute to a constitutional analysis because it appears to allow the accused to determine whether and when results of lab reports "will be contested at trial." If the accused is allowed to contest the lab results, there can be no question that the procedure is constitutional and all of an accused's rights are maintained. If, on the other hand, we construe this requirement as placing some heightened burden or requirement on the accused before the trial judge may allow the result to be challenged, then an unconstitutional limitation may or may not be established.

In arguing to uphold this procedure, the State contends the procedure may be compared to the required notice of intent to rely on an alibi defense, K.S.A. 22-3218 (actually deemed unconstitutional in *Talley v. State*, 222 Kan. 289, 564 P.2d 504 [1997], until amended by the court pursuant to K.S.A. 1976 Supp. 22-4601 to require reciprocal discovery by adding to 22-3218(2), the language: "so that reciprocal discovery rights are afforded both parties"). The alibi requirement requires a positive action by the accused and is now acknowledged to be a constitutional provision.

Another example of an affirmative action that must be taken by the accused is the requirement for a defendant to file with the court a notice of intent to assert a defense related to mental disease or defect excluding criminal responsibility pursuant to K.S.A. 22-3219.

Additionally, defendants have the right of discovery and inspection under K.S.A. 22-3212, and the holding of a pretrial conference is allowed when it "will promote a fair and expeditious trial." K.S.A. 22-3217. These are all matters of pretrial procedure in a criminal case, and we see no valid constitutional reason why utilizing K.S.A. 1996 Supp. 22-3437 is not also proper.

K.S.A. 1996 Supp. 22-3437 is construed to be constitutional so long as the accused has the right to determine whether the contents of a report concerning forensic examinations will be contested at trial. It is not unconstitutional to require this right to be affirma-

tively exercised and that the grounds of the objection have an indicia of merit, not be interposed for delay, and result in a valid issue being contested at trial.

We adopt the framework for admissibility set forth by New Jersey in *State in Interest of J.H.* and *State v. Matulewicz.* The statutory requirements of K.S.A. 1996 Supp. 22-3437(2) are similar to the information required by the New Jersey opinions. We likewise hold that while these requirements appear to be generally sufficient, a trial court may properly require proof of additional concerns as to trustworthiness before allowing admissibility of the test results.

We hold that when properly preserved and asserted by an accused, the right of confrontation remains. This right should be asserted when it is in the best interest of a defendant to do so. We are confident that defense counsel will recognize that when other defenses and arguments better serve defendants, evidence allowed under K.S.A. 1996 Supp. 22-3437 should be admitted. Forensic examiners should be required to testify only when a written record of their actions and conclusions given under oath should be tested by cross-examination.

By enacting K.S.A. 1996 Supp. 22-3437, the Kansas Legislature determined the public has a significant interest in avoiding the unnecessary expense of insuring the presence of laboratory technicians at trials where the content of their testimony will not be challenged by defendants. The availability of criminalists or laboratory personnel has been a limiting factor in setting trials, and the prompt administration of justice justifies admission of evidence without their presence in many instances. A constitutional mechanism has been provided whereby defendants can challenge the admissibility of such evidence and demonstrate the necessity for the presence of such witnesses. We leave the imposition of confrontation to counsel and not the trial court, but we are confident that trial courts can control spurious objections by defendants or attempts by the prosecution to utilize K.S.A. 1996 Supp. 22-3437 where it would clearly be inappropriate. Properly utilized, this provision can speed up trial time, clarify issues, and promote judicial economy while still fully protecting the rights of the accused.

The trial court erroneously held K.S.A. 1996 Supp. 22-3437 to be unconstitutional as a per se violation of the confrontation rights of the Sixth Amendment.

We hold K.S.A. 1996 Supp. 22-3437 to be constitutional. The State's appeal is sustained.